The case on today's docket is City Mortgage v. Estate of Mifflin. And we have for the appellant, Cheryl Lynn Intrafaya. And we have for the appellee, we have Michael Gilman. And before we begin, I know everybody's going to have to hear me say this, but we're missing, this is for our oral record. We are missing one of our panel members, Justice Goldenhurst-McGill. Nothing real serious, but he wasn't able to be here today. And he will have the opportunity to hear the oral tape. And, of course, he has the briefs and the record as well. So, having said that, you may proceed. May it please the Court. My name is Cheryl Lynn Intrafaya. I represent the Estate of Mike Mifflin in this matter. We have appealed the Union County Court's order on summary judgment on counts three and four of Mr. Mifflin's counterclaims against City Mortgage. Could you try to speak up a little bit? And if you still have trouble, I'm sure she wouldn't mind if you pulled your chair up a little bit if it's still an issue, but if you could try to raise your voice a bit. The main issue that we have regarding the summary judgment motion involves count four, which was brought under the Fair Debt Collection Practices Act. And the issue is whether City Mortgage is a debt collector or a creditor under the Act. Basically, Mr. Mifflin obtained a mortgage and a note from Wilmington AIG in July of 2004. Based on the foreclosure proceedings that were filed by City Mortgage against Mr. Mifflin, AIG assigned the mortgage to City Financial on September 9, 2005. And that was what was recorded in the Union County Reporter's Office. In July of 2006, City Financial merged with City Mortgage, and City Mortgage was the surviving entity. In December of 2007, City Mortgage and Mr. Mifflin became embroiled in a dispute regarding payments on his account regarding insurance, mortgage payments, taxes, etc. And on September 9, we sent a certified mail to City Mortgage advising of our representation of Mr. Mifflin, disputing the amount of the debt, requesting verification and an accounting. They received the certified mailing, but they continued to contact Mr. Mifflin thereafter. In June of 2010, City Mortgage filed its foreclosure complaint against Mr. Mifflin. As I said earlier, they attached the September 2005 assignment as evidence of their authority to bring the foreclosure action against Mr. Mifflin. Mr. Mifflin filed his amended answer with counterclaims against City Mortgage in November of 2010. At that time, there were three statements at the beginning of his counterclaims that were factual statements. And these are found on C191. And actually, Your Honor, there is a law paper in this file. And with your permission, if I could approach the bench, there are actually only six pages that I would like to address. Okay. Is that all right? And you're approaching to show me which... I have copies to refer to you. Okay, sure. They're all on the record. It's just the reference and the intended file. I see. Huge. Oh, so you're just going to give us copies? Sure. The document on the very first page is the assignment that they attached to the foreclosure action when they filed against Mr. Mifflin. It is horribly blurry, and I do apologize for that. But that's what it looked like when they put it on there, so that's what we're working with. When we filed our counterclaim against Mr. Mifflin, we had allegations that included those that are written on page 2 of the document, specifically 678, which had been highlighted, that Wilmington AIG assigned Mifflin's mortgage to City Financial on September 5th. And in response, they said, We admit that Wilmington Finance assigned Mifflin's mortgage to City Financial on September 9th, 2005. Number seven, the account was in default when the mortgage was assigned. Response, admit. And then they also admitted that the mortgage was registered in July of 2006. Now, the reason this becomes an issue is because under the Fair Debt Collection Practices Act, Wilmington AIG was a predator because they owned the debt. And when City Mortgage took over and was assigned the mortgage, the debt alone, from AIG, they would have retained their predator status, except for one tiny exception that's written in the Fair Debt Collection Practices Act, which states that if the debt was in default when it was transferred, they are no longer able to receive predator protection. They become a debt collector under the act. Okay. Help me with this. What is your definition of default under the act? Default means he was not current on his payments. And in all honesty, default, that's why the word default was used in the facts. Because if they did not say that he was in default, which is an undefined term under the Fair Debt Collection Practices Act, but in this case, the term that has to be found to catch City Mortgage was that it was in default. And that was the term we used in our statement of facts. And they said, they admitted it, it was in default. Okay, but my point is that there's default and then there's default, apparently. There's a default if you're a week late with your mortgage payment, you can be considered in default, correct? You can be in default if the account is outstanding, if the account is late, if the account is in foreclosure. And it really becomes an issue for a court to decide. But if you're still making your payments sporadically or late and the mortgage holder is collecting those payments, are they then considered a debt collector under the statute? They are considered a debt collector if the account is in default when it is assigned to them from the previous owner. And that would be a couple of days late. Well, and that's the thing. It's like it becomes a question of fact as to whether somebody may or may not be in default. To avoid the question of fact and to clarify the issue, because obviously these were facts that were brought with the Fair Debt Collection Practices Act counterclaim, we used the word default. And I understand that. And that was a very good attempt to get them to respond the way you hoped they would. But I still don't know if that decides the matter. That's all I'm saying. Well, given that City Mortgage is a very large corporation being represented by a very large law firm, the word default is a red flag. And if you go back and you look at their answers to the numerous statements of facts that were in the counterclaim, there were a lot of them that said, we just don't have the answer to that. We don't know. And this one, there was no question. It was a flat out, we admit the account was in default when the mortgage was assigned from AIG City Finance. To be fair, that could also mean that they believed that they were not current with their payments versus they were just no longer making current payments and there was an action to collect the debt. Correct? I mean, there's a whole kind of continuum. There is a continuum. And certainly the fact that they didn't dispute it, they didn't say, well, he was late but he wasn't in default, or these were the payments that had been, I mean, they didn't. They just flat out admitted it. Whatever meaning they give to default. They decided to attach to that word is what it now has. And I'm sure we're going to hear a different meaning is what I'm getting at. So I don't know that it's crystallized exactly the way you're presenting it. Well, it certainly is the opposite of the account was current. You've got that. I'll give you that. So with that said, they admit that it was in default. Well, let me ask a question. I think City Financial also argues that City Mortgage argues that at the time of assignment, there's a difference in opinion as to when the assignment was made. If I'm correct, they're arguing that the assignment that they referred to as being in default was the time the written assignment reached City Mortgage. But then they're also suggesting that it actually, the transfer of the loan from AIG to City Financial occurred no later than 9-4, which was actually prior to the first mortgage payment being due. How do you respond to their position in that regard? Well, Your Honor, the first response is this is an admission. And, you know, given the fact that it's May and the law schools are going to graduate, we can all go back to civil procedure and answers, and verified answers in the pleading are considered judicial admissions. That is the highest form of evidence out there. Our court has accepted that as unfallible to almost a degree. And they have also said that you cannot take, and what the judicial admission basically does is it says we're taking this fact out of contention. Okay, when this loan document mortgage was transferred from AIG to City Financial was on September 9, 2005, filed in Union County. And the fact that they further admit in their verified pleading that it was in default, those are no longer issues to even be considered. Okay, they're off the table. And so what they did after this, they filed a motion for summary judgment. And in the motion for summary judgment, they alleged that the assignment, the assignment that was on their foreclosure was the assignment that attached the claim. It supported it completely except that the assignment that they attached to their first motion was an incomplete, unsigned, unexecuted, unfiled assignment from AIG. And if you look at your documents, that's actually page 3. And all the highlighted marks on this are where somebody's name would be if they assigned the mortgage in June or July of 2004. And this is what they attached to their first motion for summary judgment. So we filed a response saying, hey, wait a minute, that's not what you attached to your foreclosure. So in response, they filed what is on page 5. It says, due to a clerical error, the incorrect assignment was attached to the affidavit. The correct assignment is now attached. The assignment that was attached was a prior version that was never fully executed or recorded, and it was attached by mistake. And what they attached to that is what is on page 6, which is the assignment of mortgage, which is a much better copy than the one that's on the front page, and shows that it was done on September 9, 2005 and filed on September 16, 2005. So they stood by those facts. And it wasn't until you get to December 2015 that Sunday City Mortgage decided that they had a problem because they had admitted facts showing that they were a debt collector under the Fair Debt Collection Practices Act and made it worse because they admitted in our counterclaims that they contacted Mr. Midland after counsel was hired and that they never provided any accounting and all these things that are violations of the Fair Debt Collection Practices Act, so they had to come up with something else. So what they came up with was extremely creative, and I do appreciate it for that. They found bank statements where Mr. Midland had written to AIG for the first three months and then started writing checks to City Financial the fourth month. They also brought in an insurance policy from Keegan Insurance, where City Financial was now named as an additional insured on the policy. And what date was that? Those were in 2004, Your Honor. And the problem you have with that is you have a judicial admission. You do. You have a judicial admission, but then you also have an affidavit, which I presume nobody is disputing that they were paying insurance on. We don't dispute that they say that, but an affidavit, according to our court, an affidavit does not place an issue of material facts previously removed from contention by a party's deliberate and unequivocal admission. So the affidavit cannot trump the judicial admission. And while I appreciate what he has put in, there is nothing that he put in that showed that City Financial had any authority to act on behalf of AIG, to ask for the money from AIG, to tell the insurance company to put them on as an insured. There's no letter from City Financial saying, hey, we have this now, put us on. We don't have that. We just have the insurance companies on. So we don't know what that letter said. We don't have any letter that may have been sent to Mr. Mifflin, which they had access to provide. They had all the documents. They had everything. But, you know, they didn't have to provide anything because discovery was so scant. But with that said, these documents that they come up with, there is nothing that usurps the authority of an actual assignment of the mortgage, the loan, the debt, whatever he wants. I mean, Mr. Gilman has done a great job also of creating different words for the mortgage loan, which we all know they go together. I mean, you're not going to take, you're not going to collect the debt on somebody if you don't have any way to enforce it, which is basically what he's trying to say, which is this is not how these are done. But in any event, there is nothing that undermines the authority of the assignment, their judicial admission, saying this is what happened. And they should be banned by that. I mean, I get what they're trying to do because certainly they're caught under the Fair Debt Collection Taxes Act based on their own admission if they are a debt collector. But that is the whole point of judicial admission. You can't just come in and answer a complaint and say, I admit this, and then turn around and say, well, now we're going to say it's this. But what they have put in as evidence with the affidavit is not anything that is a legal document saying that we have authority to do this. I mean, you can infer it. And to judge Boomey's credit, he actually put this in the order. There was an intent to transfer in June of 2004. Well, intent is great, but I can't just call up my insurance company or yours and say, I would like to be an extra insurer on this account. That doesn't happen. And like I said, all of the documents, all of the correspondence, everything that would have gone to these people to make these changes, none of those were put in. So we have circumstantial evidence indicating an intent to transfer documents that clearly were not transferred based on the statement from the attorney with the first motion for summary judgment. Because the only document that would have allowed that transfer was that unexecuted assignment that she attached to the first motion for summary judgment. But she came back and then said, oh, this was a clerical error. That was the wrong one. That was never executed and never filed. Did the Mifflin's make any payments to CFM prior to September 9th? September 9th, 2005? Yes. Okay. The fact that he was writing checks to state financial is we have no idea why. And certainly we can no longer ask Mr. Mifflin because he's no longer with us. And certainly, you know, it was not something you could have gone and asked him when they filed their second motion for summary judgment because Mr. Mifflin was already gone. So, I mean, this is the whole point of why judicial admissions have the power that they have. And we are asking this court to find that the Union County Circuit Court erred by not holding city financial to its judicial admission that the account was in default when it was transferred via the assignment that was filed in Union County on September 9th, 2005. And we are also asking that if you do that, that since Judge Ruby did not go into this matter since he filed for city mortgage, we have listed in our brief the instances and the admissions by city mortgage that are actual violations of the Fair Debt Collection Practices Act and find in favor of Mr. Mifflin on count four for the Fair Debt Collection Practices Act. Unless there's any other questions, that's all I have. Not now. You'll have the opportunity for rebuttal. Okay. Thank you. Thank you. Good morning. May it please the Court. Good morning. My name is Michael Gilman. I represent city mortgage. I'm a counter defendant in this case. As we just heard from the public's argument, may it not dispute, that Mr. Mifflin wrote checks to city mortgage. I usually go to city mortgage, but I also – it often means city financial, just for the ease of the conversation. That he wrote checks to city mortgage starting in 2004 and throughout 2005 prior to the assignment of the mortgage. The counsel said, well, I don't know why he wrote checks to city mortgage. I think the reason is obvious. The exact dollar amount on the check is the amount due on the note. He wrote the checks to city mortgage because the loan had been transferred to city mortgage as of September of 2004. Would he not have received something in the mail from AIG or city mortgage indicating that it was transferred to them? We have a document or two documents to provide city mortgage to approve the purchase of the loan that goes from August of 2004. That's internal between the companies, I'm saying. Correct. Who notified Mr. Mifflin of that? I don't have any documents that notify Mr. Mifflin of that. At least none of the record. But Mr. Mifflin must have known because he's writing checks to city mortgage. And I don't think he's doing it as a contribution to city mortgage. It's a reason why he's writing checks. He's paying down the loan. Counsel says, well, we don't know why the insurance company changed or added city mortgage as an additional insurer on the mortgage. Well, they didn't do it out of goodwill. They did it because someone asked them to do it. And they gave notice to Mr. Mifflin. And surely if Mr. Mifflin protested the addition of city mortgage as an additional insurer on the policy, he would have written to the insurance company saying, why are you making city mortgage an insurer on my policy? And this was 2004. So Mr. Mifflin knew that city mortgage acquired an interest in the mortgage and the loan and the tax in 2004. And, Your Honor, in terms of your question about it, of course, I'm talking about Wilmington and city mortgage, Wilmington endorsed the checks over city mortgage. The second and third checks were endorsed over by Wilmington to city mortgage. Why would they have done that had they not known that the loan was transferred to city mortgage? So I think the facts are very, very clear that city mortgage acquired the loan in 2004. Okay. I'm going to ask you to jump to the admission, which is where I think the crux of her argument is. Okay. I was going to get to that. The admission that was made in the answer to the complaint said that a mortgage was assigned on a certain date. It did not admit that the loan was assigned on that date. It did not admit that the note was assigned on that date. It just said the mortgage. And there's plenty of case law in Illinois, and some of it's cited in my brief, whether it's the Lewis Stone case, which says that an assignment can be a memorialization of a prior transfer. So all that was admitted was that the mortgage was assigned on that date. And that was a written assignment that ultimately became a court. It was not an admission that the note or the loan was assigned on that date. And a loan is different from a mortgage. You have to give a loan, borrow money, it's evidenced by a note, and it's secured by a mortgage. A mortgage is not the debt. The debt is the note, not the mortgage. So I don't believe that the admission that the mortgage was assigned in September 2005 constitutes an admission that the note or the debt was transferred to the sitting mortgage not until that date. But even when we're talking about the transfer of the note or the mortgage to the sitting mortgage, we're talking about an ownership interest. The sitting mortgage would own the note or the mortgage at that time. Even if, and I don't agree with that, even if we assume that there was admission that the note was transferred to sitting mortgage in September 2005, that doesn't mean the sitting mortgage did not have an interest in the loan prior to that date. It could have acquired the loan as a service-serving loan. And a service-serving loan is not a debt collector. A service-serving loan is considered a creditor under the Debt Collection Practices Act if it obtains the loan or the servicing rights prior to any default. And in fact, that's cited in Mr. Mifflin's brief on page 15. He cites a debt collector does not include mortgage servicing company as long as the debt sought to be collected was not in default and the time was assigned. And that's cited in the case of Peary v. Stewart-Tiger, 756 Fed 2nd, 1197. So sitting mortgage clearly had an interest in the loan in 2004 and prior to September 2005. And we want to assume that it didn't acquire the ownership of the loan until September of 2005. Nevertheless, it was servicing the loan prior to that time. And when it started servicing the loan, the loan was not in default, and therefore sitting mortgage would qualify as a creditor and not as a debt collector, and therefore not be subject to the Peary Debt Collection Practices Act. And then the other issue that's raised in terms of the admission is what constitutes a default. One or two days late on a note can be a default, a technical default. No one's going to declare anyone default. And most typically, including the loan documents, they provide that upon default, the lender has the right to accelerate the loan. That's what I would constitute a default in the meeting of the Peary Debt Collection Practices Act. Because it's at that point that no longer payments are no longer due. The entire debt is accelerated. And the entire debt is due, not just the monthly payments. And I would contend that that's the point in time when a default arises under the Peary Debt Collection Practices Act. When sitting mortgage answered the complaint, admitting that a default occurred, it was admitting that the problem was not timing on its payments. It was not admitting that there was an acceleration of the debt as provided for with the loan documents in order to then pursue collection efforts through a mortgage proposal action. Going back to the argument about sitting mortgage being a service or a loan at a minimum in 2004, that renders the whole judicial remission argument moot. Because even if there was a transfer of the ownership of the loan until September 2005, sitting mortgage was still a service prior to that date and the loan was not a default. Another issue raised, and this is for, is the issue of standard review. I argue in my response brief that standard review was abuse of discretion. Counsel responded and replied that courts go different ways on that. Some courts review it denotable, other courts review it as abuse of discretion. The Fifth District applies an abuse of discretion standard. That's the case of Dunning v. Dinegeen, Midwest Generation, 2015, L.A. 5th, 140168. The court said in paragraph 51, courts ruling on judicial remission is a matter of trial for its sound discretion. And, therefore, the review is denotable only if no reasonable person would have ruled, should this decision be reversed. It's obviously our position that the trial court was correct in rejecting the notion that sitting mortgage and making a loan was transferred in September 2005. Again, there's also an issue under the Fair Debt Collection Practice Act that we alerted the court to in our response brief. Even if it's found that sitting mortgage admitted, judicially admitted, that it acquired, did not acquire loans until September 2005, and that it was in default at that time, Section 4 of the Fair Debt Collection Practice, 1692A4 of the Fair Debt Collection Practice Acts still defines sitting mortgage as a creditor. Because it says that a creditor does not include any person to the extent that he receives an assignment or transfer of debt solely for purposes of facilitating collection of such debt for another. If sitting mortgage acquired the debt in its own rights, not as a servicer, but in its own right in September 2005, even if it was in default, even if it was in default, it was not collecting the debt for someone else. It was collecting the debt for itself. And, therefore, it's still a creditor. It's only a debt collector if it's collecting the debt for someone else when the debt's in default. And that concept is reiterated in Section 1692A6F of the Fair Debt Collection Practices Act, where the statute says the term debt collector includes a person collecting any debt, owed or surrogately due another, to the extent that the debt was in default at the time it was obtained by such a person. Therefore, a debt collector is a debt collector if it's servicing a debt for another and acquires those rights when the loan is in default. But if it's an owner, if the clerk is an owner, not just a servicer, when the debt's in default, it's considered a creditor. Going back to the use of the term mortgage and noted loan, counsel indicates that they're really one and the same thing. I don't think they are. I think the law provides different definitions for a note, a mortgage, and a loan. But even if somehow they equate to one another, courts have said that confusion would not be a basis to find a judicial omission. So if Mr. Mifflin intended to need a note and City Mortgage understood it to be a mortgage, as represented in the allegation, and answered it as such, clearly there is some confusion. I don't think it's on our part, but somehow there is some confusion. And in those circumstances, a judicial omission should not be found. There's a case of North Shore Community Bank and Trusters at Sheffield, 2014, LAP 1-123-784, where the court says, As penalizing confusion or an honest mistake is not among the purpose of doctrine of judicial omissions, it must appear that the party making the statement had no reasonable possibility of being mistaken in order for the statement to qualify as a judicial omission. To this day, I think we were just debating there was a mortgage assigned on that day. Mifflin's counsel believes that it was a note. Obviously, we have to finish changing the terms. That should not be the basis to support finding a judicial omission. The other issue that was raised on appeal is seeking the reversal of the order on the breach of fiduciary duty count based on the escrow provisions of the mortgage. The counsel has not argued that it's an opening statement. It's our position that there was no escrow, that the escrow was waived from the get-go. And what happened was, during the course of the loan, Mr. Mifflin, who had agreed to pay real estate taxes and insurance, failed to pay them, seeking mortgage payment and trying to recoup their payment amounts from Mr. Mifflin. It wasn't in the form of an escrow, where each month they were taking a certain portion of payment to set aside to pay real estate taxes and insurance premiums. Instead, it was just the inversion that the court was advancing, and they, to protect the interest in the property, they wanted to protect the interest against a prior real estate lien and against any damage to the collateral caused by a fire that wasn't protected by insurance. So I don't believe that any – I believe the trial judge was correct in finding that there was no fiduciary duty between CD Morgan and Mifflin, and therefore, there was no breach of fiduciary duty. In conclusion, we request that the court affirm the judgment of the jury court. Thank you. Thank you. Do we have a rebuttal? Rebuttal. Your Honor, I'm just going to address the six points that Mr. Gilman just set forth. Starting with the standard of review, he is claiming that it's an abuse of discretion. With regard to an abuse of discretion, what the courts actually look for is that the admission be a clear, unequivocal, and uniquely within the party's personal knowledge, and further require the statement be intentional. I think that we can say that their admission that the mortgage was in default is a fact that is completely within their wheel of information. So even if you have an abuse of discretion standard, I do believe that we have reached the level we need to show the error in that. With regard to the attempt by Mr. Gilman to say, well, we only assigned the mortgage. We didn't assign the note. I would direct your attention to these six pages that I previously handed to you. And if you look at the original assignment of mortgage, which was on page 3, which was never executed, which I believe we can say is all very plain. If you look down at the bottom, after it says $75,000, and in the book in the page number that's missing, together with the notes and obligations therein described, and the money due, and to become due thereon with interest, and all rights approved. That includes the note, the loan, the note, whatever you want to call it. It's all in there. Now, this is the one that was not executed. So we can go to the last page, page 6, to see if they've put those in on that one. And if you are in the first paragraph, the fourth line down, the described mortgage, together with certain notes, described with all interest, all means, all rights due, and to become due thereon. So now you have the note. So you can't just keep separating things out and say, well, the mortgage didn't meet the note. The assignment of mortgage that they are relying on says mortgage is no. So with that said, I don't really think that's an issue either. With regard to their argument of it being someone else's debt, if it's someone else's debt, then they can be a debt collector. If they can't, they're a creditor. If it's their own debt, this is an issue that is very contested, Your Honors. The Seventh Circuit, in fact, all of the circuits except the Tenth Circuit and the Fourth Circuit, have stated that if you are a creditor and you assign your debt to someone else, whether they are a servicer, a creditor, anybody else, that is sufficient if it is in default for you to be a debt collector. The Fourth Circuit recently came out and said, no, it has to be your own debt. That issue is currently before the United States Supreme Court. Oral arguments were held on April 18th or 16th of this year. No decision has been issued on that issue. So currently, the State of Illinois and the Seventh Circuit have found a contrary result of what was presented by Mr. Gilman. And, in fact, the State of Illinois presented an amicus brief before the Supreme Court along with Oregon and a number of other states saying that this is how it should be interpreted. If I do share your duty, we ask that to be removed because there was an issue with that. Judge Newley found that it was not because he said that Mr. Mifflin agreed to set up an escrow account. And while I appreciate that he agreed to set up an escrow account if need be, that does not remove fiduciary duty for somebody to actually handle the account correctly and give an accounting of where all that money went. So that was kind of a mistake in that. What about the fact that Mr. Mifflin actually paid the full amount of due of the mortgage? The full payment doctrine basically saying that he has no... Well, certainly it's a defense to the claim that the fiduciary duty account was filed long before he was able to pay it off, which he did with a loan from his dad. But that's not why the judge put it out there. He said that there was no fiduciary duty because he agreed to an escrow account, but that does not relieve a party of fiduciary duty just because someone said go ahead and set up an escrow account. So that was an error as a matter of law. Now, if you find that because the voluntary payment doctrine comes into play, and so it's a moot point, I would certainly understand that. However, that was not why Judge Gooby took it out. And then finally, we heard from Mr. Gilman to say that they began servicing this account based on this evidence. And you know what? The problem I have, he says, that City Mortgage or City Financial clearly had an interest in the loan. And he said earlier in that they could have acquired an interest earlier. Okay, where's the service contract? Where is the evidence showing that they have the authority to do anything on behalf of this loan? There isn't any. The only evidence that there would have been is if this original transfer of mortgage that did not list City Financial as the party receiving Mr. Mifflin's loan, if that document had been executed, they would have had authority to do what they were doing. I think everybody believes that this document was assigned. I think they all thought this was the real assignment until they realized, oh, we don't have a name here. And once they realized that, then we have another assignment somewhere down the road. But there is no legal contract showing that they're the servicer. There is nothing showing in this record that City Financial had the authority to be collecting the payments from Mr. Mifflin on behalf of AIG. The only legal document which was admitted as a judicial admission was the assignment from September of 2005, which they admitted at that time Mr. Mifflin's account was in default. We ask this court to recognize the importance of that judicial admission, and vacate the judge's finding and summary judgment in favor of City Financial and to then find that summary judgment should be issued to Mr. Mifflin. Thank you. Thank you. Thank you both for your briefs and your arguments, and we will take the matter under advisement.